839 So.2d 970 (2003)
STATE of Louisiana, Appellee,
v.
Dale Wayne GREEN, Appellant.
No. 36,741-KA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*973 Louisiana Appellate Project, by Edward K. Bauman, Lake Charles, Dale Wayne Green, In Proper Person, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Edward M. Brossette, Assistant District Attorneys, for Appellee.
Before WILLIAMS, PEATROSS and KOSTELKA (Pro Tempore), JJ.
KOSTELKA, Judge Pro Tempore.
After Dale Wayne Green ("Green") was convicted of distribution of marijuana, La. R.S. 40:966(A)(1), he was adjudicated a third felony offender and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Green now appeals his conviction and sentence.[1] We affirm.

FACTS
At approximately 6:30 p.m. on September 9, 1999, Agent Michael Gray ("Gray") was working alone as an undercover agent for the narcotics division of the Caddo Parish Sheriff's Office. As part of the covert operation, Gray drove a pickup truck containing hidden video and audio surveillance equipment through a known *974 drug area near Keithville, Louisiana. On that date, the video equipment performed properly, but the audio system malfunctioned. While driving near an intersection known for illegal drug sales, Gray noticed a man, later identified as Green, standing on a street corner, gesturing him to stop. Gray stopped his vehicle and Green asked him if he was looking for anything. Gray responded that he was looking for "weed," and Green agreed to take him where he could buy some. At that time, Green identified himself as "Dale" and got into Gray's truck. Green directed Gray to a location where they made contact with a younger male[2] who also got into the vehicle. The three rode around looking for an individual who allegedly had marijuana for sale. At some point, the younger male exited the vehicle and Gray and Green continued to ride around. A few minutes later, Gray and Green came upon a van in which the younger male, who had been dropped off, was seated on the passenger side. Green exited Gray's truck, made contact with the driver of the van and came back to Gray's truck with marijuana. Gray handed Green twenty dollars and Green handed Gray the marijuana. Gray protested the amount of marijuana and Green returned to the van. When Green informed Gray that he had received the correct amount of marijuana, Gray and Green discussed Green's future assistance with drug buys, and Gray gave Green an additional ten dollars for helping him buy drugs. The next day Gray identified Green as the individual who sold him the drugs. Nevertheless, Green's arrest was delayed until November 12, 1999, after the completion of the undercover operation.

DISCUSSION

Sufficiency of the Evidence
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992).
The standard of appellate review for a sufficiency-of-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.3d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant is guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La.Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
*975 The crime of distribution is the knowing or intentional distribution of a controlled dangerous substance. State v. Scott, 31,617 (La.App.2d Cir.02/24/99), 730 So.2d 515. Distribution is defined as "delivery" or "physical transfer." Id. In addition to delivery, the state must prove the defendant must have known or had guilty knowledge of the controlled dangerous substance when he or she transferred it. Id. Louisiana R.S. 40:966(A)(1) and 40:964(C)(22) make it unlawful to distribute marijuana, a Schedule I controlled dangerous substance.
On appeal, Green contends that the evidence was insufficient to convict him because Gray's testimony was discredited by the video of the transaction. In a pro se brief, Green also contends that the evidence was insufficient to convict him because he was entrapped into distributing the marijuana to the undercover agent.
Of course, entrapment contentions are normally reviewed on appeal pursuant to the Jackson, supra, sufficiency-of-the-evidence standard. State v. Simpson, XXXX-XXXX (La.App. 4th Cir.10/16/02), 829 So.2d 650. In this case, however, the record before us discloses that Green neither asserted nor argued the affirmative defense of entrapment at trial. A legal argument, including entrapment, cannot be raised for the first time on appeal. La. C.Cr.P. art. 841; State v. Richardson, 35,450 (La.App.2d Cir.02/27/01), 811 So.2d 154. Accordingly, this issue is not properly before us for review.
We also reject the remainder of Green's sufficiency-of-the-evidence complaint. At trial, Gray clearly testified that it was Green who delivered marijuana to him on September 9, 1999 for the total sum of thirty dollars. Gray also testified that Green made a statement after his arrest in which he admitted to selling the marijuana, but for only twenty dollars; Green claimed the additional ten dollars was a loan. Although the surveillance video tape was at times poor in quality and contained no sound, it generally corroborates Gray's testimony regarding the transaction. This evidence depicts Green exiting the vehicle and Gray paying money and receiving a tissue-wrapped bundle. Obviously, if believed, this testimony and evidence is more than adequate to support Green's conviction. State v. White, 28,095 La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.06/26/98), 719 So.2d 1048.
Green contends that the video depiction of the events fails to show Green "... leaving the vehicle and returning as Deputy Gray testified to at trial...." Specifically, Gray stated that after Green exited the vehicle, he returned once with the marijuana, once to confirm the amount of the drug, and once to receive the ten dollars. On appeal, Green claims that the video depiction of the events contradicts this testimony and destroys Gray's credibility. As noted above, however, because of the location of the camera, the video captured none of Green's activities after he exited the vehicle. Therefore, rather than being contradictory to Gray's testimony regarding Green's actions during and after the transaction, the video offers no evidence regarding that portion of the events and is better characterized as simply being not fully corroborative. Even so, the record shows that in his closing argument, Green's counsel pointed out the claimed conflict to the jury. Accordingly, any alleged discrepancies in the testimony of the undercover officer were credibility factors which were considered by the jury. It is apparent that in this case the jury viewed any inconsistency in Gray's testimony to be insignificant to his overall credibility. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra. We decline to disturb this *976 credibility call. When viewed in a light most favorable to the prosecution, the remaining evidence is sufficient to prove the essential elements of distribution of marijuana beyond a reasonable doubt.

Multiple Offender Adjudication
In his next assignment of error, Green contends that the trial court erred in adjudicating him a third felony offender because the state failed to adequately prove the predicate offenses upon which the adjudication was based. In his pro se brief, Green also contends that the trial court erred in allowing the state to seal the records pertaining to his second felony offense which denied him the opportunity to review the evidence against him and present available defenses.
On July 16, 2001, the state filed an habitual offender bill of information charging Green as a third felony offender based upon previous guilty pleas for attempted possession of cocaine in 1990 and simple robbery in 1991. On February 7, 2002, Green filed an objection to the multiple offender bill. Nevertheless, on February 11, 2002, the trial court denied Green's objection and adjudicated him a third felony offender.
If the defendant denies the allegations of the multiple offender bill of information, the burden is on the state to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the state. The state will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea-one which reflects a colloquy between judge and defendant wherein the defendant was informed of, and specifically waived, his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the state introduces anything less than a "perfect" transcript, i.e., a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the state to determine whether the state has met its burden of proving the defendant's prior guilty plea was informed and voluntary and made with an articulated waiver of the three Boykin rights. State v. Shelton, 621 So.2d 769 (La.1993). The state's burden of proof may be met by a contemporaneous record of the guilty plea proceedings, preferably by the transcript itself. Id.
In this case, the state produced copies of the court minutes and bills of information for both the 1990 attempted possession of cocaine guilty plea and the 1991 simple robbery guilty plea.[3] This evidence shows that Green was represented by counsel in both of these proceedings. The minutes of each guilty plea reflect that Green was informed of "his Constitutional rights as per Boykin v. Alabama (See Court Reporter's transcript)." At the multiple offender hearing, the state also presented the testimony of a fingerprint expert, who identified Green as the defendant in both previous pleas.
Green complains that the pleas are infirm because there is no evidence that he was informed of the nature or elements of the crimes, sentencing exposure or that subsequent offenses could be *977 used in a multiple offender bill thereby carrying enhanced penalties in accordance with La.C.Cr.P. art. 556.1(E). Notably, our review of the record reveals that only one of these grounds was asserted by Green in his objection to the habitual offender bill, i.e., the possibility of enhanced penalties. As discussed above, new legal arguments cannot be asserted for the first time on appeal. La. C.Cr.P. art. 841; State v. Cressy, 440 So.2d 141 (La.1983); Richardson, supra. Therefore, our review is limited solely to the issue of whether or not the trial court erroneously failed to inform Green of possible enhanced penalties in accordance with La. C.Cr.P. art. 556.1(E).
We find no merit to this claim. La. C.Cr.P. art. 556.1 sets forth the duty of the court to provide a defendant with certain information during the taking of a guilty plea. Section E, which has recently been eliminated from the article, mandated that the court inform the defendant of the possibility of enhanced penalties. Green solely argues that the previous pleas should be deemed invalid as predicate pleas because the state has failed to produce evidence showing that he was informed of enhanced penalties at either of his previous pleas. He does not contend that he would not have pled guilty had he been given sentencing enhancement information. For the following reasons, however, we conclude that such an omission is insufficient to invalidate the adjudication. Article 556.1 was not enacted until 1997, well after Green's 1990 and 1991 guilty pleas. The jurisprudence prior to that time indicates that the lack of advice and information to the defendant of enhanced penalties did not impact the voluntariness of the plea to the charged offense. State v. Myers, 503 So.2d 1085 (La.App. 2d Cir.1987); See discussion in State v. Dennis Johnson, 34,902 (La.App.2d Cir.09/26/01), 796 So.2d 201. Further, the failure of the trial judge to inform the defendant of the penalties for subsequent offenses in accordance with Article 556.1(E) has been held not to be reversible error because the advice was not required to be given prior to the plea. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158. Finally, without the presentation of any particularized basis for this argument by Green, any failure of the trial court to inform him of penalty enhancement would be harmless error insufficient to invalidate the pleas. Id. In these circumstances, Green has failed to satisfy his burden of producing some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Therefore, we find the evidence presented by the state identifying Green as the defendant in both the 1990 and 1991 guilty pleas and showing that he was then represented by counsel and informed of his Boykin rights sufficient to satisfy the state's burden of proof of the predicate offenses.
In his pro se brief, Green also argues that the trial court committed error in allowing "the state to seal the records pertaining to the second predicate offense." Green claims that the "sealed" records denied him the ability to review the evidence against him and present available defenses. Apparently, Green's argument is grounded in the state's description of its evidence relating to the simple robbery conviction as being "under seal." However, the record is clear that the phrase utilized by the state referred to the authenticity of the documents, not the closure of the documents from view. Moreover, the record contains copies of both the court minutes and bill of information submitted by the state in proof of the simple robbery conviction. Accordingly, this argument is without merit.

Excessive Sentence
Green also contends that the trial court failed to comply with La.C.Cr.P. art.
*978 894.1, erred in imposing a constitutionally excessive sentence, and in finding that it had no sentencing discretion in imposing the life sentence.
Notably, Green's untimely motion to reconsider sentence raised only the issue of the excessiveness of the imposed sentence. In these circumstances, our review is limited to that issue. See, La.C.Cr.P. art. 881.1.[4]
The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Walter Johnson, 97-1906 (La.03/04/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). Pursuant to this function, the legislature enacted the habitual offender statute which has been held on numerous occasions to be constitutional. State v. Walter Johnson, supra. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed to be constitutional. Id.
The determination of an appropriate minimum sentence by the legislature should be afforded great deference by the judiciary. While the judiciary is not without authority to declare a mandatory minimum sentence under the habitual offender law excessive under the facts of a particular case, this should be done only in those rare instances where there is clear and convincing evidence to rebut the presumption of constitutionality. Id.; see, Dorthey, supra.
The trial judge may not rely solely upon the nonviolent nature of the instant crime or prior crimes as sufficient evidence to rebut the constitutional presumption. State v. Walter Johnson, supra. A record of nonviolent offenses can be a factor in a sentencing judge's determination that the minimum sentence is excessive, but it cannot be the only or major reason for such a determination. Id.
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. Additionally, in determining whether Green has met his burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
In compliance with La. R.S. 15:529.1A(1)(b)(ii), as it read on the date of Green's offense and which imposed a statutory minimum life sentence for a third felony offender who had a prior felony defined as a crime of violence under La. R.S. 14:2(13), the court imposed a life sentence to be served without benefits. Accordingly, the imposed sentence is presumed to be constitutional. State v. Walter Johnson, supra.
On appeal, Green avers that the imposed sentence is excessive in light of his previous criminal history and the fact that he *979 was a middleman who arranged for an undercover deputy to buy a twenty-dollar bag of marijuana. Green argues that he will ultimately spend the rest of his life in jail despite receiving only ten dollars for the sale. Nevertheless, Green made no such argument to the trial court nor presented evidence showing his claimed unusual circumstances or that he is the "exceptional" defendant for which downward departure from the mandatory statutory minimum is required. Moreover, as the trial court noted, Green's criminal record includes both a crime of violence and a drug offense punishable by more than five years. His propensity toward illicit drug activity has obviously not been assuaged by previous sentencing leniency. In these circumstances, the trial court correctly determined that it had no discretion in imposing the life sentence. Green's sentence is, therefore, affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Both Green and his counsel have submitted briefs.
[2] This individual was never identified.
[3] Notably, the state also provided Green with the transcript of the 1990 attempted possession of cocaine guilty plea in discovery. That transcript shows that Green was informed of and waived his rights to trial by jury, cross-examination and confrontation of witnesses and his privilege against compulsory self-incrimination.
[4] Moreover, because the sentence imposed is statutorily prescribed, trial court compliance with La.C.Cr.P. art. 894.1 is not mandated. State v. Carlos Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).