927 So.2d 1259 (2006)
STATE of Louisiana, Appellee
v.
Sylvester MEAD, Appellant.
No. 40,406-KA.
Court of Appeal of Louisiana, Second Circuit.
April 19, 2006.
*1261 Peggy J. Sullivan, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Ron C. Stamps, Edward M. Brossette, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
WILLIAMS, Judge.
The defendant, Sylvester Mead, was charged by bill of information with public intimidation, a violation of LSA-R.S. 14:122. After a jury trial, defendant was found guilty as charged. However, the trial court granted defendant's motion for post-verdict judgment of acquittal. On appeal, this court reversed, reinstated the conviction and remanded for consideration of the habitual offender bill. On remand, the district court adjudicated defendant a second felony offender and imposed a sentence of ten years at hard labor. The state applied for a writ of review. This court found that the evidence supported defendant's adjudication as a third-felony offender and remanded for resentencing. After a sentencing hearing, the district court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his habitual offender adjudication and sentence. For the following reasons, we affirm the habitual offender adjudication and remand defendant's case to the trial court for reconsideration of the life sentence imposed.

FACTS AND PROCEDURAL BACKGROUND
At approximately 2:00 a.m. on October 22, 2000, police officers responded to a domestic disturbance call at the defendant's residence in Shreveport and he was arrested. An officer alleged that while defendant was being transported to the holding facility he threatened to harm the officer. Defendant was charged with public intimidation. After a jury trial, defendant was convicted as charged. The trial court granted defendant's motion for post-verdict judgment of acquittal and the state appealed. This court reversed the trial court's acquittal and reinstated the conviction. State v. Mead, 36,131 (La.App. 2d Cir.8/14/02), 823 So.2d 1045, writ denied, 2002-2384 (La.3/14/03), 839 So.2d 34.
Subsequently, defendant was charged as a fourth felony offender but was adjudicated a second offender and sentenced to 10 years at hard labor. The state filed a writ application. In State v. Mead, 38,129 (La. App. 2d Cir.9/18/03), this court ruled that the trial court misinterpreted the law regarding the cleansing period, found that the evidence established defendant as a third-felony offender and remanded for resentencing consistent with the habitual offender *1262 statute. The defendant's appeal was dismissed without prejudice as moot since he had not yet been resentenced. State v. Mead, 38,213 (La.App. 2d Cir.11/20/03). After a hearing, the district court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant sought review of this court's ruling on the habitual offender issue and in State ex rel. Mead v. State, 04-0030 (La.1/7/05), 891 So.2d 680, the supreme court ordered the trial court to appoint counsel and grant a hearing to determine if defendant was entitled to an out-of-time appeal. After the hearing, defendant filed the present appeal.

DISCUSSION
The defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that the mandatory life sentence imposed is unconstitutional given the circumstances of the case and his background.
Under the Louisiana Constitution, the legislature has sole authority to define conduct as criminal and provide penalties for such conduct. LSA-Const. art. III, Section 1; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Pursuant to this authority, the legislature enacted the habitual offender statute, LSA-R.S. 15:529.1, which has been upheld as constitutional on numerous occasions. State v. Johnson, supra; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Green, 36,-741 (La.App. 2d Cir.3/5/03), 839 So.2d 970. Since the habitual offender statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed to be constitutional. State v. Johnson, supra; State v. Green, supra.
The determination of an appropriate minimum sentence by the legislature should be afforded great deference by the judiciary. While the judiciary is not without authority to declare a mandatory minimum sentence under the habitual offender law excessive under the facts of a particular case, this should be done only in those rare instances where there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, supra; State v. Wade, 36,295 (La.App. 2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213.
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, supra; State v. Green, supra.
The sentencing court may not rely solely upon the nonviolent nature of the present crime or prior crimes as sufficient evidence to rebut the constitutional presumption. A record of nonviolent offenses can be a factor in a sentencing court's determination that the minimum sentence is excessive, but cannot be the only, or even the major reason, for such a determination. State v. Johnson, supra; State v. Green, supra.
In the present case, at the time of defendant's offense LSA-R.S. 15:529.1(A)(1)(b)(ii) provided that if the third felony or either of the two prior felonies is a felony defined as a crime of violence under LSA-R.S. 14:2(13), then "the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence." We note that effective June 15, 2001, after defendant's commission of the present crime, but before conviction and *1263 sentencing, this provision was amended to require a life sentence only in those cases where the third felony and the two prior felonies are defined as crimes of violence. However, this more lenient sentencing scheme does not apply in this case. See State v. Parker, 03-0924 (La.4/14/04), 871 So.2d 317. Thus, Section 529.1(A)(1)(b)(ii) mandated a life sentence without benefits for defendant since he is a third felony offender and one of the prior felonies, aggravated battery, is defined as a crime of violence under LSA-R.S. 14:2(13)(e).
Prior to imposing sentence, the trial court allowed the defense counsel an opportunity to present evidence to show why defendant should not be given a life term. Three witnesses testified that defendant possessed the capacity to be rehabilitated and should not receive a life sentence. The first witness stated that he had known defendant for approximately 15 years and he was employed during that period. The second witness, a cousin of defendant, testified that he was a good worker who cared for his family. The third witness, a counselor with the prison ministry at Caddo Correctional Center, stated that defendant would be a good candidate for the organization's rehabilitation program, which assisted prisoners in their efforts to re-enter society. These witnesses acknowledged that they were not familiar with the defendant's criminal history.
After hearing the testimony, the district court expressed the belief that the trial evidence did not support a conviction for public intimidation. The court noted that the hearing had given defense counsel "one more opportunity to make a record to show the Court why the Court should deviate from a life sentence." In imposing sentence, the court stated:
Now, having considered the evidence that's been presented, the whole record, this court is still convinced and still believes that the nature of the instant offense, public intimidation, does not warrant, under any conscionable or constitutional basis a life sentence. I'm not saying that Mr. Mead's criminal history is not a bad one. It's awful.. . . This judge is not opposed to the habitual offender [statute] and believes in life sentences. I just simply don't think that this particular case warrants a life sentence.
Secondly, I think that a sentence less than life would be adequate, would protect the public, would foster the interest of justice and give the defendant an opportunity to get old enough that perhaps maybe he won't commit such senseless and childish and foolish types of crimes. I still don't think he was a threat to the police officer, and I don't know what could ever convince me that you were a threat. But you have been a threat to your family, you have been a lawless criminal on this community and you wasted a lot of the community's resources. . . . And I've been sitting here and I anticipated what this court could find or hear that would make this court legally depart from the life sentence. The bottom line is I don't see it. . . . I'm convinced that I have no choice and the law does dictate.
So having said that, rather than spend any more of my time, the Court's time or any other resources and try to come up with a reason for you not to get a life sentence, I've given up. I've done all that I can do. Because I think this would be the fifth time I would try to do something and I think it would be the fifth time I would be reversed. So having said all that and we've consumed enough time, based upon the Second Circuit Court of Appeal ruling that you are in fact a third habitual offender this court is now sentencing you to the mandatory sentence of life imprisonment for *1264 the remainder of your natural life without the benefit of parole, probation, or suspension of sentence.
As noted above, the habitual offender statute subjected defendant to a mandatory life sentence as a third felony offender with a prior offense defined as a crime of violence. Whenever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining whether defendant falls within those "rare" circumstances where a downward departure is warranted. State v. Wilson, 37,555 (La. App. 2d Cir.11/6/03), 859 So.2d 957, writ denied, XXXX-XXXX (La.6/4/04), 876 So.2d 73.
In this type of case, the district court has the duty to determine whether the mandatory sentence is constitutional as applied to this defendant in accordance with the principles which our supreme court enunciated in Dorthey and Johnson. The district court's statements at sentencing do not indicate that such an analysis was performed in this case. Consequently, we must remand this case to the district court for reconsideration of the sentence imposed in light of State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.
Upon remand, the defendant is entitled to have the district court determine whether imposition of life imprisonment without benefit of parole, probation or suspension of sentence in this case is constitutionally excessive after considering the guidelines of Johnson and weighing pertinent factors, including the use or lack of violence in the current and prior offenses, the legislature's amendment of the habitual offender statute to provide a more lenient punishment for crimes committed after June 2001 and the extent to which this particular life imprisonment imposes an undue burden on the taxpayers, who would be required to feed, house and clothe this defendant for life. See State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339; State v. Wilson, supra.
The record shows that defendant's prior convictions were a 1985 simple burglary and a 1995 aggravated battery. However, we note that the record does not contain details of the defendant's prior offenses. Thus, the district court may benefit from ordering a pre-sentence investigation prior to reconsideration.

Habitual Offender Adjudication
In four pro se assignments of error, the defendant contends the evidence was insufficient to support his adjudication as a multiple offender. Defendant argues that the state never produced the "proper" documentation with which to adjudicate him as an habitual offender since the guilty plea transcripts were not submitted at the hearing and are not available now.
At the time defendant committed the present offense, LSA-R.S. 15:529.1 provided in pertinent part:
(b) Except as otherwise provided in this subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. . . . The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response.
The state filed a fourth felony habitual offender bill of information listing the public intimidation conviction and defendant's prior convictions for armed robbery in 1979, simple burglary in 1985 and aggravated battery in 1995. In response, the defendant filed a pro se pleading in opposition *1265 to the multiple offender bill on the following grounds:
1. The habitual offender statute does not apply in cases "where more than ten years have elapsed since the expiration of the prior convictions."
2. The bill subjects him to double jeopardy since he is being tried twice for the same crime.
3. He was not informed of the "habitual bill" until after the jury reached its verdict.
4. Under the bill he will receive cruel and unusual punishment since it is disproportionate to the crime.
Defendant's trial attorney also filed an objection to the multiple offender bill. The pleading objected to the use of all three prior convictions on the following grounds:
1. The state has failed to provide any evidence of the armed robbery conviction.
2. The documents to support the April 12, 1985 conviction for simple burglary provided during discovery were not original or certified copies.
3. The state has not shown that the defendant was clearly advised of his constitutional rights or that the plea constituted a waiver of his rights.
4. The 1985 plea is "outside the cleansing period".
5. The guilty plea entered on June 22, 1995, is defective because the court did not advise the defendant of his right to compulsory process, against self-incrimination and to a jury trial.
At the multiple offender hearing, the state's expert obtained defendant's fingerprints in court and they were introduced into evidence as Exhibit S-1. In addition, the state presented Exhibit S-2, a certified copy of the bill of information filed April 12, 1985, in Caddo docket number 130,154, charging Mead with simple burglary and bearing his fingerprints on the reverse side of the bill; Exhibit S-3, a certified copy of the clerk of court's minutes in Caddo docket number 130,154 reflecting that the accused appeared in court with counsel and entered a guilty plea after being advised of his rights per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Exhibit S-4, a certified copy of the bill of information filed May 3, 1995, in docket number 174,-037, charging Mead with aggravated battery and bearing his fingerprints on the reverse side of the bill; and Exhibit S-5, a certified copy of the clerk of court's minutes in docket number 174,037, reflecting that the accused was present with counsel and defendant was informed of his rights per Boykin v. Alabama when he entered the guilty plea.
The defense counsel objected to admission of the minutes on the grounds that they could not be certified by the state's fingerprint expert and they did not specify that defendant understood his constitutional rights. The trial court found that the documents presented were certified copies and were admissible. The defense did not present any evidence.
The trial court ruled that the 1985 conviction could not be used since it was outside the 10-year cleansing period and adjudicated defendant a second felony offender. As noted above, this court reversed, finding that the district court incorrectly applied the cleansing period. Subsequently, defendant was sentenced as a third felony offender. In his pro se brief defendant argues that there was never "proper documentation" to adjudicate him as a multiple offender because the "Boykin transcripts" in docket numbers 130,154 and 174,037 are lost.
Under the holding in State v. Shelton, 621 So.2d 769 (La.1993), the state has the initial burden to prove the existence of the prior guilty pleas and that defendant *1266 was represented by counsel when they were taken. Once the state satisfied its burden, the defendant was required to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas. The record shows that defendant's only objections were that the minutes were not certified and they did not mention that defendant had been "fully" advised of his rights.
The case of State v. O'Neal, 34,814 (La.App. 2d Cir.10/12/01), 795 So.2d 1292, involved a similar factual scenario. In O'Neal, the accused argued that his 1993 conviction should not have been used to enhance his sentence because the state did not introduce the guilty plea transcript. This court found that although the prior plea transcript was never entered into evidence, the state had proven that the accused was represented by counsel shifting the burden to defendant to prove an irregularity. As in O'Neal, the record in this case demonstrates that the state carried its burden to prove that defendant was represented by counsel when he entered the prior guilty pleas. Thus, the state sufficiently established the defendant's two prior felony convictions to support the habitual offender adjudication. The assignments of error lack merit.
In his final pro se assignment, defendant contends the district court erred in sentencing him after a reasonable time period had expired. LSA-C.Cr.P. art. 874 provides that the court shall impose sentence without unreasonable delay.
Neither the defendant nor his counsel briefed this issue. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). Thus, this assignment of error was abandoned. However, we note that on September 18, 2003, this matter was remanded to the district court for resentencing and defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence on February 18, 2004, a period of approximately five months. Consequently, the record does not demonstrate an unreasonable delay in sentencing.

CONCLUSION
For the foregoing reasons, the habitual offender adjudication is affirmed and this case is remanded to the district court for reconsideration of the life sentence imposed consistent with this opinion.
HABITUAL OFFENDER ADJUDICATION AFFIRMED; REMANDED FOR RECONSIDERATION.
BROWN, J., dissents with written reasons.
BROWN, C.J., dissenting.
The mandatory minimum punishments provided for by the multiple offender statute are presumed constitutional. Where there is a mandatory sentence under a statute that is constitutional, there is no need for the trial court to justify, under article 894.1, a sentence it is legally required to impose. State v. Koon, 31,177 (La.App. 2d Cir.02/24/99), 730 So.2d 503; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).
There is no need to remand this case back to the trial court for a third time. The trial court provided defendant with the opportunity to show that, as applied to him, the mandatory life sentence under the Habitual Offender Law was constitutionally excessive. The trial court stated, "I've been sitting here, and I anticipated what this court could find or hear that would make this court legally depart from a life sentence. The bottom line is I don't see *1267 it . . . I'm convinced that I have no choice and the law does dictate." (Emphasis added).
As stated in State v. Dorthey, supra, "[a]ccordingly, under the 1974 Constitution `the excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.'" Defendant was allowed to present witnesses and argument on this issue. Rather than remand, this court should, based upon the record, review the trial court's decision.