748 So.2d 608 (1999)
STATE of Louisiana, Appellee,
v.
John HELD, Appellant.
No. 32,610-KA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1999.
*609 John Held, Appellant, in pro. per.
H. Paul Garner, Homer, Counsel for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Daniel W. Newell, Asst. Dist. Atty., Counsel for Appellee.
*610 Before NORRIS, C.J., and BROWN and CARAWAY, JJ.
BROWN, J.,
Defendant, John Held, was convicted by a jury of battery of a correctional officer, a violation of La. R.S. 14:34.2. He was sentenced to three years at hard labor without benefit of parole, probation or suspension to run consecutively with any other pending sentence. Defendant has appealed his conviction. For the reasons set forth below, we affirm.

Facts
A bill of information charged that on or about October 16, 1996,[1] defendant, who was serving a 20-year sentence for manslaughter at Wade Correctional Center ("Wade"), struck Sergeant Darell Hamiter, a correctional officer, in the forehead with his fist.
On October 4, 1996, defendant and another inmate, Wilfred Perrodin, were being transferred from lockdown to a working cell block when they got into a fight in the lobby area. Correctional officers moved to break up the fight. Sgt. Emerson and Lt. Gordon held defendant while the victim, Sgt. Hamiter, subdued Perrodin, who was lying on the floor. Defendant broke loose and struck Sgt. Hamiter in the head with his fist. At that time Sgt. Hamiter was holding Perrodin's hands. The state's case consisted primarily of the testimony of these three officers.
After the state rested, defendant presented the testimony of two other inmates, Marshall Chambers and Marvin Brown, who stated that they saw the incident and that it was Perrodin who hit Sgt. Hamiter. The jury convicted defendant and he has appealed, urging three assignments of error.

Discussion

Right to Counsel
In his first two assignments of error, defendant asserts that the trial court erred in depriving him of his constitutional right to assistance of counsel. Specifically, defendant argues that the court erred in determining that he waived his right to counsel and in requiring him to proceed to trial in proper person.
U.S. Constitution Amendments VI and XIV, as well as La. Const. article I, § 13, guarantee an accused in a criminal proceeding the right to assistance of counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980). A defendant may waive his right to counsel "if he knows what he is doing, his choice is made with his eyes open" and the record reflects his awareness of the dangers and disadvantages of self-representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Strain, 585 So.2d 540 (La.1991).
There is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra. The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience and conduct of the accused. Id.; State v. Kennon, 588 So.2d 1348 (La. *611 App. 2d Cir.1991), writ denied, 600 So.2d 634 (La.1992).
Furthermore, the adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. Id. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. DeGrate, 25,732 (La.App.2d Cir.03/30/94), 634 So.2d 965, writ denied, 94-1362 (La.10/07/94), 644 So.2d 630.
If a defendant is indigent, as in the instant case, he has the right to court-appointed counsel. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, supra; State v. Adams, 369 So.2d 1327 (La.1979); City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978).
The indigent defendant, however, does not have the right to have a particular attorney appointed to represent him. State v. Thomas, 28,790 (La.App.2d Cir.10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La.04/25/97), 692 So.2d 1081. An indigent defendant can always retain an attorney of his choice; that right cannot be manipulated so as to obstruct the orderly procedure of the courts, but must be exercised at a reasonable time, in a reasonable manner and at an appropriate stage in the proceedings. State v. Champion, 412 So.2d 1048 (La.1982); State v. Harper, 381 So.2d 468 (La.1980); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747; State v. Foster, 29,459 (La. App.2d Cir.06/18/97), 697 So.2d 616.
A defendant's refusal to proceed with appointed counsel and his failure to secure his own attorney may in some circumstances result in an implied waiver of his right to counsel. State v. Johnson, 450 So.2d 354 (La.1984); State v. Harper, supra; City of Baton Rouge v. Dees, supra. If a defendant repeatedly fails to retain counsel, or if he appears without an attorney after being clearly and unequivocally warned by the trial court that the case will proceed to trial regardless, such fact may support a finding of implied waiver. State v. Wisenbaker, 428 So.2d 790 (La.1983); State v. Batiste, 96-0526 (La.App. 3d Cir.12/11/96), 687 So.2d 499, writ denied, 97-0174 (La.06/30/97), 696 So.2d 1003.
On February 4, 1997, Darrell Avery was appointed to represent defendant. On that date, defendant, through his appointed counsel, entered a plea of not guilty. Eventually, it became clear that Jimmy Teat, a member of Avery's law firm, was actually going to represent defendant. A preliminary examination, scheduled for April 8, 1997, was waived. The matter was set for trial on February 17, 1998.
On February 12, 1998, five days before trial was set to begin and ten months after defendant's last court appearance, defendant informed the court of conflicts with his attorney since "day one." Defendant further related to the court that he wanted another lawyer. Teat responded by telling the court that he had met with defendant on three different occasions and that on the previous day, he had met with defendant to inform him of an offer he obtained from the district attorney's office and the court. It was Teat's belief, after that meeting, that defendant would accept a proposed 30-month sentence.
After some arguing between defendant and Teat, the court noted, "It's just the appearance to the court, Mr. Held, when things aren't going your way, you want new counsel of record." Thereafter, defendant stated:
Myself? If I've got to do (trial without counsel), yeah, we can do it like that if that's the case. I feel he ain't going to help me. He ain't helped me from day one. The only thing, he come to my ... come to the jail twice and told me, he said if I don't take ... first it was three years. If I don't take the three years, they're going to hit me with 529.5, the *612 district attorney. To me, that's a trick. Okay. Tell me your going to give me a life sentence.
The court and defendant continued to discuss the issue of defendant's representation. The record reflects that defendant persisted in arguing with his appointed counsel. The court advised defendant that he was making a mistake waiving his right to counsel and defendant responded by saying that he did not want Teat and that he was willing to represent himself. The court then relieved Teat of representing defendant and took a short recess before informing defendant of his rights concerning his decision to represent himself.
The court informed defendant that he would have to participate in the selection of a jury, make challenges, make an opening statement, call witnesses, cross-examine the prosecution's witnesses, introduce evidence, request special jury charges, object to the court's jury charges, and make a closing statement. In response, defendant told the court that he understood these responsibilities. Defendant was also informed that he would not receive special treatment because he was appearing in proper person and that he would have to follow the technical rules of evidence and procedure in making motions, objections and arguments, in presenting evidence and in selecting the jury.
In response to the trial court's questions, defendant stated that he was 37 years old, had a third grade education and no work experience. Defendant also told the court that he was a "dope fiend" and had never been through a criminal trial, having pled guilty on each of his four prior convictions.
On February 17, 1998, defendant, in proper person, appeared for trial. The court informed defendant that there were two jury trials scheduled before his and that it did not appear that they would get to his case.
On June 2, 1998, defendant appeared again before the trial court on a "motion" for speedy trial.[2] During his argument on the matter, defendant told the court:
This case has been going on for eighteen months. Okay, ... This courtroom is a circus, okay. You know, this man (assistant district attorney) threatened me with a life sentence. Your lady has violated all of my constitutional rights by telling me I've got to represent myself, okay.... I'm ready to get this over with, you know. I feel that ... I'm trying to get a speedy trial, let's get it over with, you know.... I'm tired of wasting this Court's time and I'm tired of the Court wasting my time.
He went on to tell the court, "I've told this Court that I don't have but a third grade education. They tell me that that doesn't matter, you can't ... you don't want this man (Teat), you'll do it (represent himself). Let's do it. It's as simple as that." The court found that defendant failed to include an affidavit certifying his ability to proceed to trial within the applicable time delays and his speedy trial request was denied. See La.C.Cr.P. art. 701(D)(1).
Defendant's next court date was July 21, 1998. On that date, defendant's second motion for speedy trial was granted and the matter was set for trial in September. Several other motions were disposed of and the issue of self-representation was not raised. On November 6, 1998, defendant appeared again before the court and expressed his displeasure with the fact that his case had still not gone to trial. The court again inquired if defendant wanted an attorney appointed to represent him at trial. Defendant's responses were disrespectful and the judge had defendant temporarily removed from the courtroom. Thereafter, the trial court appointed Paul Garner to assist defendant as stand-by *613 counsel. The court specifically asked defendant whether he wanted Garner as stand-by counsel or whether he wanted Garner to fully represent him. Defendant told the court that he would allow Garner to "assist him." The trial of this matter commenced on November 16, 1998. Garner actively aided defendant and has filed a brief on defendant's behalf in this appeal.
The record in this case clearly reflects defendant's understanding of his right to counsel and his choice one week before the date initially set for trial not to accept representation by the court-appointed attorney. The trial court fully complied with all the requirements to insure that defendant's rejection of court-appointed counsel and his decision to represent himself were knowingly, voluntarily and intelligently made. When the court asked defendant whether he wanted to represent himself, defendant's response was that he did if his only alternative was to accept the attorney appointed by the court. Thereafter, the court gave defendant other opportunities to either have another attorney appointed or hire counsel himself and ultimately appointed stand-by counsel to assist defendant. These assignments of error are without merit.

Exclusion of Testimony
During the trial, defendant attempted to introduce the testimony of inmates Michael King, Aubrey Jackson and Marshall Chambers. Each of these inmates claimed that Wilfred Perrodin, who did not testify at trial, confessed that he, not defendant, hit Sgt. Hamiter during the altercation, but that defendant was going to be the one punished for the crime.[3] The trial court allowed defendant to make a proffer of their testimony. Although the trial court found that Perrodin was unavailable, it ruled that the jury could not hear the testimony of King, Jackson and Chambers because defendant had been unable to prove the trustworthiness of their testimony pursuant to La. C.E. art. 804(B)(3).
Defendant argues that the trial court should have allowed the inmates' testimony under La. C.E. art. 804(B)(3), which provides:
(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. (Emphasis added).
La. C.E. art. 804(A) provides:
(A) Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:

. . .
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying. (Emphasis added).
*614 To establish Perrodin's unavailability, defendant called as a witness Frances Rasberry, the classification manager at Wade. She did not know Perrodin but stated that she could "look in the Department of Corrections computer system to see just where it would show a location on him if he's still under our jurisdiction... even under parole supervision." Defendant presented no other evidence, such as an unservable subpoena, to prove Perrodin's unavailability.
It is clear that defendant did not try to locate Perrodin for purposes of testifying at his trial. Instead, he merely recalled one of the state's witnesses in an attempt to establish that Perrodin was unavailable. Genuine unavailability of a witness is the jurisprudential requirement to obviate constitutional confrontation problems. State v. Robinson, 423 So.2d 1053 (La.1982). Furthermore, a witness is not unavailable for purposes of the exception to the confrontation requirement unless the authorities have made a diligent and good faith effort to obtain his presence at trial. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); State v. Sam, 283 So.2d 81 (La.1973), affirmed, 304 So.2d 659 (La.1974).
There is absolutely no evidence that defendant made any effort to secure the presence of Perrodin at trial; thus, there has not been a showing of unavailability in this case. The trial court should have excluded the testimony of inmates Jackson, King and Chambers on this basis. We do not reach the question of the trial court's finding that their testimony was not trustworthy, but note that Marshall Chambers' eyewitness testimony was not believed by the jury. This assignment of error is meritless.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The incident actually took place on October 4, 1996, not on October 16th as alleged in the bill of information. The date of the offense, however, is not essential in this case. As provided by La.C.Cr.P. art. 468, the date of the commission of an offense need not be alleged unless it is essential to the offense. When the date is not essential to the offense, as in this case, an indictment or bill of information shall not be held insufficient if it does not state the proper date. State v. Brown, 421 So.2d 854 (La.1982); State v. Winnon, 28,654 (La.App.2d Cir.09/25/96), 681 So.2d 463, writ denied, 96-2576 (La.03/27/97), 692 So.2d 391.

Furthermore, it is well-settled that such an immaterial defect of form is not grounds for relief when, as in the case sub judice, the defendant neither made an objection prior to the jury's verdict nor asserted that he was surprised or prejudiced by the error. State v. Hernandez, 410 So.2d 1381 (La.1982); State v. Winnon, supra.
[2] Actually, defendant's request for a speedy trial came in the form of a letter to the trial court.
[3] Chambers did testify before the jury that he saw the fight and that it was Perrodin that hit Sgt. Hamiter. He was not allowed to state what Perrodin allegedly said to him.