988 So.2d 740 (2007)
STATE of Louisiana, Appellee,
v.
Sylvester MEAD, Appellant.
No. 42,674-KA.
Court of Appeal of Louisiana, Second Circuit.
November 14, 2007.
Opinion After Remand July 23, 2008.
*741 Louisiana Appellate Project by Peggy J. Sullivan, Sylvester Mead, for Appellant.
Paul Joseph Carmouche, District Attorney, Catherine Marion Estopinal, Edward M. Brossette, Assistant District Attorneys, for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
A jury found Sylvester Mead guilty of public intimidation, in violation of La. R.S. 14:122. Sentenced as a third felony offender to a mandatory life term without benefit of parole, probation, or suspension of sentence, he now appeals his sentence as being constitutionally excessive. The record is unclear as to whether Mead properly waived his right to counsel during his most recent hearing. Accordingly, we remand to the trial court for a hearing as to his waiver of counsel or, if an appropriate hearing was held and a determination was made below, for a supplementation of the appellate record documenting Mead's waiver of counsel. In either event, we direct that this determination be communicated to us within 45 days of this opinion.
The facts of the underlying case are found in State v. Mead, 36,131 (La.App.2d Cir.8/14/02), 823 So.2d 1045, writ denied, 2002-2384 (La.3/14/03), 839 So.2d 34. Mead was charged with public intimidation for making threats against Shreveport Police *742 Officer Charles Rose during a domestic violence call at Mead's home on October 22, 2000. A unanimous jury found defendant guilty as charged. The trial court granted a defense motion for post-verdict judgment of acquittal. We reversed, reinstating the conviction and remanding the matter to the trial court.
The trial court then adjudicated the defendant as a second felony offender and sentenced him to ten years. The state filed an application for writ of supervisory review, which this court granted. State v. Sylvester Mead, 38,129-KW (La.App.2d Cir.9/18/03). In that ruling, this court found the evidence supported an adjudication as a third felony offender. The matter was again remanded for resentencing. The pending appeal filed by the defendant attacking his sentence, State v. Sylvester Mead, 38,213 (La.App.2d Cir.11/20/03), was dismissed without prejudice as moot because the defendant had not yet been resentenced.
On the next remand hearing, the defendant was sentenced to the mandatory life sentence as a third felony offender. The defendant sought review of this court's ruling on the habitual offender issue, and the supreme court determined that the defendant was entitled to a hearing to determine if he was in fact entitled to an out-of-time appeal. State ex rel. Mead v. State, 04-0030 (La.1/7/05), 891 So.2d 680. After a hearing in the trial court, the defendant again appealed his habitual offender adjudication and his life sentence. In State v. Mead, 40,406 (La.App.2d Cir.4/19/06), 927 So.2d 1259, writ denied, XXXX-XXXX (La.12/8/06), 943 So.2d 1060, this court affirmed the adjudication and remanded the matter for reconsideration of the life sentence imposed.
On remand, the trial court found that the mandatory life sentence was appropriate in this case and sentenced the defendant accordingly. The defendant filed an application for supervisory writ of review in the matter, and this court converted the writ application to the instant appeal.

Self-Representation
Defendant argues that the record lacks any proof of when or how the decision was reached that he could adequately represent himself.
The defendant argues, pro se, that he clearly advised the trial judge that he did not understand the proceedings on the day the hearing was held and the trial court erred in allowing him to represent himself. Further, the defendant contends his trial attorney was "not helping, neither explaining, nor was Attorney Swift trying to assist in any way."
Our jurisprudence relative to self-representation is well settled.[1]
*743 On May 8, 2006, the defendant filed a pro se motion to fix his resentencing date and a memorandum in support of a downward departure of his sentence. He requested that subpoenas be issued for several witnesses. On June 12, 2006, attorney Ricky Swift of the public defender's office filed a "motion to deviate from the constitutionally excessive third felony habitual offender sentence." Several days later, the defendant filed a motion requesting the trial judge personally oversee the subpoena processing, alleging that his attorney had broken confidentiality laws. The defendant continued to file pro se motions requesting his sentence be reconsidered and alleging that his attorney was ineffective. On August 14, 2006, a hearing addressing the defendant's numerous pro se motions was held. The hearing on the merits was held August 30-31, 2006.
The defendant alleged that his counsel, Mr. Swift, had made "a lot of errors" in representing him, particularly the failure to serve subpoenas. The learned trial court explained to Mead that counsel had done all expected of him in the issuance of the subpoenas. During the hearing, the court made several references to Attorney Swift acting as standby counsel for the defendant and that the defendant would be acting as his own counsel. The record is silent as to when the determination that the defendant would act as his own counsel was made. At the hearing on the pro se motions, Mr. Swift was listed as counsel for the defendant. During the hearing regarding Mead's sentence, Mr. Swift was listed as both counsel and co-counsel with the defendant appearing in proper person.
From the beginning of the two-day hearing, the defendant acted as his own counsel. Mr. Swift noted that he was appearing as standby counsel on the defendant's motion. At the outset, Mr. Swift assisted the defendant with matters regarding subpoenas and whether his witnesses had been served. At one point during the hearing when a witness was not *744 present, Mr. Swift requested a suspension of the proceedings until the witness could be located. Thereafter, Mr. Swift had very little participation in the hearing. It appears that the defendant at some point made an election to act as his own counsel; however, the record is unclear as to when or how this was done. Accordingly, we must remand to clarify this point either by:
 a supplementation of the record relative to the determination, if it was made below, or
 conducting a hearing to make a record on this point.
Defendant has requested other relief, which is pretermitted pending a determination of whether Mead made a clear and unequivocal waiver of his right to counsel.

DECREE
We remand for supplementation of this record within 45 days relative to the propriety and sufficiency of defendant's waiver of counsel and request for self-representation.

OPINION AFTER REMAND
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
The history of this case may be best reviewed in two places:
 Our latest opinion in this matter, found at State v. Sylvester Mead, 42,674 (La. App.2d Cir.11/14/07), 988 So.2d 740, 2007 WL 3357362; and
 The trial court's excellent SECOND RULING WITH RESPECT TO RECONSIDERATION OF LIFE SENTENCE, dated July 14, 2008, a copy being annexed as "Attachment A."
Nonetheless, a partial time line of the most relevant events follows:
 On April 19, 2006, this court ordered that the trial court conduct a Johnson[1] hearing to determine whether or not the imposition of a life sentence without benefits was constitutionally excessive in this matter.
 On August 30 and 31, 2006, the trial court held the hearing.
 On February 8, 2007, the trial court ruled that the life sentence without benefits was not excessive on this record.
 On November 14, 2007, this court ordered the trial court to hold a hearing addressing the defendant's waiver of counsel and a request for self-representation regarding the previous Johnson hearing.
 On December 18, 2007, this hearing was held, resulting in a December 21, 2007, ruling of the trial court, which found that the record failed to reveal that the defendant made a clear and unequivocal waiver of his right to counsel. Therefore, the defendant was entitled to a new Johnson hearing, at which he was represented by new counsel.
 On June 2, 2008, the new Johnson hearing was held, and based solely on the evidence that day, the trial court ruled on July 14, 2008, that a life sentence under these facts was not constitutionally excessive.
Accordingly, the appeal of the trial court's ruling of February 8, 2007, is now moot, and is dismissed.

DECREE
The appeal is DISMISSED.

*745 ATTACHMENT "A"
STATE OF LOUISIANA
VERSUS
SYLVESTER MEAD
 Number 211,460 Section "I"
 First Judicial District Court
 Caddo Parish, Louisiana
 July 14, 2008

SECOND RULING WITH RESPECT TO RECONSIDERATION OF LIFE SENTENCE
This Second Ruling derives from the following three (3) remands from the Court of Appeal, Second Circuit:
1.) Number 38, 129-KW, Opinion rendered September 18, 2003, directing this Court to impose sentence as required for a third felony habitual offender subject to the test provided by State v. Dorthey, 623 So.2d 1276 (La.1993) and the guidelines of State v. Johnson, 97-1906, 709 So.2d 672, (La.03/04/98).
2.)Number 40406-KA, Opinion rendered April 19, 2006, directing this Court to determine whether imposition of life imprisonment without benefit of parole, probation od suspension od sentence in this case is constitutionally excessive after considering the guidelines of State v. Johnson, 97-1906, 709 So.2d 672, (La.03/04/98).
3.) Number 42,674-KA, Opinion rendered November 14, 2007, directing this court to determine the propriety and sufficiency of Defendant's waiver of counsel and request for self-representation regarding the Johnson hearing previously ordered by said Court of Appeal and conducted by this Court.
In compliance with the above remands, this court did the following:
A.) On February 18, 2004, Defendants was sentences as a third felony habitual offender to life imprisonment at hard labor without benefit of probation od suspension of sentence.
B.) On August 30 and 31, 2006, an evidentiary hearing was conducted to reconsider the mandatory life imprisonment sentence without benefit of probation or suspension of sentence to determine whether a downward departure of said life sentence was warranted based upon unconstitutionally excessive reason(s) as outline in State v. Johnson. By Ruling rendered February 8, 2007, this Court found that said life sentence was not unconstitutionally excessive based upon State v. Johnson.

C.) On December 18, 2007, a hearing was conducted to determine the propriety and sufficiency of Defendant's waiver of council and request for self-representation, whereupon, this Court found that Defendant did not make a clear and unequivocal waiver of his right to council; and, by Order issued December 21, 2007, this Court concluded that Defendant was entitled to a new hearing to determine whether a downward departure of said life sentence was warranted based upon unconstitutionally excessive reason(s) as outline in State v. Johnson an Defendant was assigned new Counsel to represent him.
D.) On June 2, 1008, a second evidentiary hearing was conducted to determine whether a downward departure of the mandatory life imprisonment *746 sentence without benefit of probation or suspension of sentence was warranted based upon unconstitutionally excessive reason(s) as outline in State v. Johnson.

Based solely on the evidence presented during the June 2, 2008, hearing and the medical records submitted on June 16, 2008, by Defense Counsel after the hearing, this Second Ruling addresses the mandatory life imprisonment sentence without benefit of probation or suspension od sentence to determine whether a downward departure od said life sentence was warranted based upon unconstitutionally excessive reasons(s) as outline in State v. Johnson. This court specifically observes that the evidence previously presented at the August 30 and 30, 2006, hearing was not considered by this Court because said evidence had been presented during a hearing when Defendant had not properly waived his right to counsel and therefore, was improperly self-representing.

Fact Established At Hearing

Defendant's Case:
Defendant called the following witnesses:
1.) Mozelle Cox: Ms. Cox testified that she was currently employed as a teacher and enjoyed working with children and the handicapped. She had known Defendant for 15 years or so after meeting him through a friend. During their three to four year relationship, Defendant had assisted her while she was hospitalized (1982-1983) in ways such as caring for her and ensuring her six children were fed and attended school. Through the years, she talked with Defendant off and on before and after Defendant had gotten married. She had never met Defendant's wife. She understood Defendant to have been in jail because he was drunk and had threaten and resisted a police officer. She knew Defendant had "good and bad points" and she previously had problems with Defendant "hut they worked them out". One of his bad points was that Defendant was a jealous person; he was jealous during their romantic relationship, but he never threaten her. She was familiar with Defendant's criminal history, however, when asked specifically about certain convictions Defendant bad, she had no knowledge of most of his convictions. [This Court observed Ms. Cox's demeanor of surprise upon being questioned about the extent of Defendant's criminal history.]
2.) Benny Ray Draughn: Mr. Draughn testified that he had worked as a factory glass maker for 25 years, had been married for 39 years, and has one son. He knew Defendant through Defendant's three year relationship with his sister during the early 1990's. However, Mr. Draughn did not have much contact with Defendant and only saw Defendant when he visited his sister's house. His sister had large-sized sons who would not have allowed Defendant to cause her problems. [This Court observed Mr. Draughn laugh at his own comment.] Defendant's relationship ended with his sister prior to her death. He knew Defendant to have always had employment. He considered Defendant a "good person".
Mr. Draughn did not know the purpose of the Court hearing or why Defendant had been arrested. He was not aware of Defendant's criminal history, did not believe Defendant would be a danger if released from jail, but would not have wanted Defendant to carry a gun around his sister if she were still alive.
3.) Alice Smith: Ms. Smith testified that she has been working five and one-half years in a special education program with special needs students. Prior to her *747 current employment, she worked in the home health care field. She was a certified drug counselor. In 1994, she and Defendant were clients together in a residential, long term substance abuse program. She admitted to having three relapses, but is now clean and working on her masters degree.
Defendant was married by Ms. Smith's pastor to one of her friends and they continued going together to the same church. Her friend had two children prior to marrying Defendant. Her friend and Defendant had Defendant's first child (daughter) together. Defendant worked in the lawn service business with Ms. Smith's husband. Ms. Smith and her husband attended several barbecues at the house of Defendant and his wife. Defendant had a clean, well kept home like the kind Ms. Smith had wished she could have had. She considered Defendant funny and knew he liked to play card games and dominoes. She had high hopes for Defendant.
Ms. Smith, Defendant, and his wife had relapses and started using again. His wife was back in a half-way house while his daughter was living with his wife's sister. She knew Defendant loved his daughter, but that he had been taking her money to buy drugs and alcohol. Ms. Smith was not familiar with Defendant's criminal history. She believes his wife would be safe if Defendant was released from jail.
Ms. Smith kept up with Defendant until he went to jail. She was not aware of any threatening letters from Defendant to his wife. His wife never complained about Defendant being violent toward her. If Defendant were to relapse into drugs, she would be "concerned but not fearful".
4.) Sylvester Mead: Defendant testified that he is 47 years old, grew up in the Mooretown section of Shreveport, Louisiana, and was the oldest of his three siblings whom he had to watch while they were growing up. His mother still lives in Shreveport, Louisiana, but is in poor health and needs his help. His father had other children hut was helpful if Defendant needed anything. His father was a big influence on Defendant's life until he died.
Defendant went to school through the eleventh grade and attended church. He always had employment and never had a problem working. His father got him a truck and tools early on in his life. He built fences for a number of years, he learned to cook from his grandmother and worked as a cook and he had other types of jobs.
Defendant admitted his substance abuse problem. He was in a long term residential substance abuse program for 18 months where he actually lived for 14 months. He stayed sober for five years before relapsing.
Defendant's daughter is now six years old and living with her oldest sister and Defendant's mother. His daughter has visited him, along with his Mother, since his arrest including three or four visits at Angola. He writes his daughter every week to ten days.
Defendant stated he and his wife had bought a house together in Shreveport, Louisiana. He believes it is best not to have contact with his wife and decided a year ago to stop dealing with his wife and "let it go". Defendant and his wife were married in 1998, but are now divorced.
His wife's daughter was only 11 months old when he moved in with her. He was her only father-figure and trying to adopt her. He does not hear from her hut he last wrote her at Christmas, 2007. He does not want to make trouble for her.
Defendant has been in other prison facilities before going to Angola in February, *748 2004. While at Angola, Defendant has participated in a significant number of educational, religious, and self-help programs having earned over 14 certificates, including one substance abuse program. He has passed his GED test and attends two substance abuse meetings per week. He has stayed off alcohol for seven years. He admitted he had used drugs, yet he stated he had an alcohol problem and denied having a drug problem.
He currently has health problems where he has been treated in Houma, New Orleans, Baton Rouge, and Shreveport, Louisiana. His health problems include his eyes, stomach, back, and skin which currently do not affect his ability to work, but could in the future.
Defendant acknowledged his involvement in most all of his past criminal activities beginning with his first crime of Armed Robbery where he admitted having a gun to take money from a man he had lent money. He admitted other convictions of Simple Burglary, Aggravated Battery, and Forgery of checks.
Regarding the instant conviction, Defendant denied having a knife. He said the argument with his wife started over him wanting to give his daughter a piece of fish. He said he had too much to drink that night. He blames the alcohol in part, but also blamed the police officer for pulling him out of his house. He shares "some responsibility" for the incident that night.
Defendant stated he wrote letters to his child calling his wife a "B ... A ... Mother...". [This Court observed Defendant's demeanor when he was asked if he had stated during a previous hearing before this Court something to the effect of "standing over {his wife's} dead body".] He recalled writing the letter in 2002 to his wife.
Defendant acknowledged that most people say "bad things about him behind his back". He said "I'm a long way from being perfect". He is interested in going to Seattle, Washington, for himself and his daughter and living with his baby sister and mother. He said after seven years in jail, he could not say he was sorry enough. He never would have gotten married. He does not want to die in prison.

State's Case:
The State elected not to call any witnesses.

Discussion of the Facts and Law
In summary, this Court has considered the above testimony from the June 2, 2008, hearing and the exhibits admitted into evidence which included, Defendant's criminal history introduced by the State; copies of certificates and other documentation of Defendant's participation in educational, religious, substance abuse, and other self-help programs introduced by Defendant; the May 23, 2008, letter regarding Defendant's medical records introduced by Defendant; and the medical records submitted by Defense Counsel on June 16, 2008, after the hearing.
In reviewing the totality of said evidence, this Court makes the following findings:
Defendant began his youthful years without any remarkable disadvantages of means which would form a basis for this Court to find that Defendant was significantly deprived of the necessities of life. Of course, he lacked certain advantages but so did many, if not most, youths who grew up during his era. As he was growing up, Defendant also experienced significant relationships with his father and siblings. In fact, Defendant grew up with the will and means to employ himself and make a living. He was able to attain certain goals like many other individuals *749 such as getting married, raising a family, and purchasing a home. Defendant was even fortunate to have had supporting Wends and a church.
This Court finds that regrettably Defendant developed a substance abuse problem, along with individuals he came to associate with, and perhaps this problem attributed to his poor behavior and choices on the night of the instant incident. However, Defendant had the opportunities to seek and find substance abuse treatment in an attempt to address his substance abuse (alcohol and drug) addiction and in spite of the number of relapses he may have suffered, Defendant still had treatment options available to him.
This Court finds that Defendant committed a number of prior felony offenses which have resulted in his current legal consequences. At least two offenses were serious enough for purposes of the Louisiana Felony Habitual Offender Statute, to wit: Armed Robbery and Aggravated Battery. Defendant's propensity to be violent has continued even during the time of his confinement at Angola as evidenced by the letters Defendant acknowledged writing and said letters were additional evidence that Defendant has the propensity to act poorly and make poor decisions.
This Court finds that Defendant has a long history of working to support himself and his family. This Court believes Defendant is physically able to employ himself and would undoubtedly continue willing to employ his skills if he was released from prison. Further, this Court acknowledges that Defendant has on-going medical concerns which will require treatment during Defendant's long term incarceration. If his medical conditions were to worsen, the State's prison system would bare the ultimate cost.
Further, this Court finds that Defendant has most certainly mitigated his circumstances by the significant number of educational, religious, substance abuse, and other self-help programs he has continued to participate in and already completed. While incarcerated, Defendant appears to have maintain his sobriety. Defendant especially has earned this Court's accolades for his self-improvement achievements and sobriety and notwithstanding Defendant's demeanor of aggravations displayed towards every Counsel assigned to represent him, Defendant never showed disrespect towards this Court as he pursued postconviction relief.
In order for this Court to depart downward from the mandatory minimum sentence under the Habitual Offender Law, Defendant must establish a favorable factual basis with respect to reason(s) why he "falls within those `rare' circumstances". State v. Wilson, 37,555 (La.App.2d Cir.11/06/03), 859 So. 957, writ denied, XXXX-XXXX (La.06/04/04), 876 So.2d 73. Also, Defendant must present evidence consistent with the guidelines of Johnson, supra.
With respect to the instant matter, this Court further observes the following:
 No specific evidence of violence was presented. Defendant used "words" which were perceived by the police officer as "threatening" and the jury agreed.
 No evidence was presented regarding the legislature's amendment of the habitual offender statute to provide a more lenient punishment for crimes committed after June, 2001.
 No evidence was presented with respect to the extent to which Defendant's particular life imprisonment imposes an undue burden on the taxpayers, who would be required to feed, house, clothe, and care for him *750 during a life sentence. Nevertheless, this Court speculates the exceedingly high cost to incarcerate the Defendant and provide him with certain necessary accommodations and supplies for the rest of his "natural" life, especially given his current medical treatment. [Emphasis added.]
See State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339; Wilson, supra; and State v. Mead, KA 05-40406 (La. App.2d Cir.11/06/03), writ denied, 2006-KO-1426 (La.12/08/06), 943 So.2d 1060.
Upon making the above findings and observations and considering the law, this Court cannot articulate a favorable factual basis that Defendant has established he "falls within those `rare' circumstances" and within the legal guidelines. Wilson, supra., and Johnson, supra.

Conclusion
This Court has unequivocally and steadfastly opined that Defendant should not have been found guilty of the offense of Public Intimidation. Given the actions of Defendant on the night of the instant offense resulting in his conviction for the offense of Public Intimidation, this Court strongly believes that Defendant should not be serving a mandatory life sentence without benefit of probation or suspension of sentence.
Nevertheless, no matter how long this Court were to deliberate about this matter, it cannot fashion a legal result to explain that the life sentence without probation or suspension of sentence is unconstitutionally excessive after considering the guidelines of Johnson, supra. Only the conscience of this Court would otherwise create a justification to depart downward from the mandatory minimum sentence as provided by this State's Habitual Felony Offender Statute.
Therefore, this Court concludes that Defendant is not entitled to the relief sought and his request for reconsideration of sentence to a downward departure from the mandatory minimum life sentence without the benefit of probation or suspension of sentence is denied.
RULING RENDERED, READ, AND SIGNED this 14th day of July, 2008, in Shreveport, Caddo Parish, Louisiana.
/s/ Leon L. Emanuel, III
Leon L. Emanuel, III
District Judge
NOTES
[1] U.S. Constitutional Amendments VI and XIV, as well as Louisiana Constitution article I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La. 1980); State v. White, 325 So.2d 584 (La.1976); State v. Flanagan, 32,535 (La.App.2d Cir.10/29/99), 744 So.2d 718. The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of counsel, in order that an accused may enter into pro se representation, must be clear and unequivocal. Id.; State v. Hegwood, 345 So.2d 1179 (La. 1977). In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly and intelligently. Faretta, supra. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta, supra, citing Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Turner, 37,162 (La. App.2d Cir.10/29/03), 859 So.2d 911, writ denied, 03-3400 (La.3/26/04) 871 So.2d 347; State v. Flanagan, supra. The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Harper, 381 So.2d 468 (La.1980).
The adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. State v. Kennon, 588 So.2d 1348 (La.App. 2d Cir. 1991), writ denied, 600 So.2d 634 (La.1992); State v. Held, 32,610 (La.App.2d Cir. 12/10/99), 748 So.2d 608. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. Strain, 585 So.2d 540 (La.1991); State v. Drumgole, 31,294 (La. App.2d Cir. 10/28/98), 721 So.2d 956. In State v. Strain, supra, the Louisiana Supreme Court stated:
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver.
Whether an accused has knowingly and intelligently waived his right to counsel is a question which depends on the facts and circumstances of each case. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Strain, supra. A more thorough inquiry is required to allow defendant to represent himself at a felony trial than is required to accept his uncounseled guilty plea to an uncomplicated misdemeanor. Strain, supra.
[1] State v. Johnson, XXXX-XXXX (La.3/4/98), 709 So.2d 672.