16 So.3d 470 (2009)
STATE of Louisiana, Appellee
v.
Sylvester MEAD, Appellant.
No. 44,447-KA.
Court of Appeal of Louisiana, Second Circuit.
July 1, 2009.
Rehearing Denied August 13, 2009.
*471 Louisiana Appellate Project by Peggy J. Sullivan, Monroe, for Appellant.
Sylvester Mead, pro se.
Charles R. Scott, District Attorney, John Ford McWilliams, Jr., Dhu Thompson, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and MOORE, JJ.
STEWART, J.
The defendant, Sylvester Mead, was adjudicated a third felony habitual offender pursuant to La. R.S. 15:529.1(A)(1)(b)(ii). He was sentenced to the mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. The trial court held a hearing pursuant to State v. Johnson, infra, to determine if a downward departure of the defendant's mandatory life sentence was warranted. The trial court determined that a downward departure was not warranted, and the defendant's term of life imprisonment was upheld. The defendant now appeals. For the reasons stated herein, we affirm the defendant's conviction and sentence.

PROCEDURAL HISTORY
The defendant was found guilty of public intimidation, a violation of La. R.S. 14:122, by a unanimous jury on September 11, 2001. The trial court granted the defendant's motion for a post-verdict judgment of acquittal. The state appealed the trial court's decision, and this court reversed and reinstated the defendant's conviction.[1] The state subsequently filed a habitual offender bill charging the defendant as a fourth-felony habitual offender. After a hearing, the defendant was adjudicated a second felony habitual offender and was sentenced to serve 10 years at hard labor. The state sought writs with this court, and this court determined that the evidence established the defendant as a third-felony habitual offender.[2] The case was remanded to the trial court for resentencing.
After another hearing, the trial court adjudicated the defendant a third-felony habitual offender, and it sentenced the defendant to serve the mandatory term of life imprisonment pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), which states:
ii. If the third felony and the two prior felonies are felonies defined *472 as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of the commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without the benefit of parole, probation, or suspension of sentence.
The defendant filed an appeal with this court alleging that his life sentence was excessive. This court remanded the case to the trial court so that it could determine whether the mandatory sentence of life imprisonment was constitutional as applied to the defendant.[3]See State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). This court also held that the evidence supported the defendant's adjudication as a third-felony habitual offender.
On remand, the trial court held a hearing consistent with this court's order, and, in an extensive written ruling, the court determined that the defendant's mandatory sentence of life imprisonment was not constitutionally excessive.[4] The defendant now appeals.

FACTS
The then 47-year-old defendant's third-felony habitual offender designation is based on his 2001 conviction of public intimidation, a 1995 conviction for aggravated battery, and a 1985 conviction for simple burglary. The defendant's 2001 conviction for public intimidation stemmed from an incident that occurred on October 22, 2000, when the drunken defendant told a police officer that he would kill the officer if the officer came back to his home. Mead, 823 So.2d 1045. The police officer had been called to the defendant's home when his then 15-year-old stepdaughter called 9-1-1 after she heard the defendant tell her mother that he would kill her and her mother. Id. The record did not contain the factual circumstances of the defendant's aggravated battery and simple burglary convictions.
As stated above, the trial court held a hearing to determine if the instant case presented one of those rare circumstances that would warrant a downward departure from the mandatory term of life imprisonment for a conviction as a third-felony offender pursuant to La. R.S. 15:529.1(A)(1)(b)(ii). The court determined that this case was not one of those rare circumstances that would warrant a departure. Mead, 988 So.2d 740. In reaching its decision, the trial court made several findings. The trial court recognized that the defendant was able to attain certain goals similar to many other individuals, such as getting married, raising a family, and purchasing a home. The court observed that the defendant had substance abuse problems with drugs and alcohol that may have contributed to his conviction for public intimidation. The defendant had a criminal history with felony convictions, and he showed his propensity for violence even while incarcerated by sending harassing letters to his wife. *473 However, the court observed that the defendant's actions in the public intimidation conviction did not involve physical violence, but rather the use of words, which were perceived by the police officer as "threatening."
The court continued, noting that the defendant suffered from a medical condition that would require continual treatment in long-term incarceration and that, as mitigation, the defendant had completed various educational, religious, substance abuse, and other self-help programs while in prison. The court stated that no evidence was presented to show that the legislature had amended the Habitual Offender Law after June 2001 to provide for a lenient punishment or to show how the defendant's incarceration would place an undue burden on taxpayers. The court ultimately concluded that the defendant was not entitled to the relief sought and denied his request for a reconsideration of his life sentence.

LAW AND DISCUSSION

Excessiveness of Sentence
In the first assignment of error, the defendant asserts that the trial court imposed an unconstitutionally excessive sentence when he was sentenced to serve a term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. In his first pro se assignment of error, the defendant submits that under La.C.Cr.P. art. 894(B)(25-26, 29, 31-32), the trial court erred by not deviating from the mandatory life sentence, downward to a more lenient one, that would be deemed constitutional, proper, just and fair, in compliance with the sentencing guidelines. In the second pro se assignment of error, the defendant further argues that the purpose of these hearings was to examine the defendant's rehabilitation program, his achievements while incarcerated, and all his accomplishments that would qualify him as an exceptional person and a victim of the legislature. In the defendant's third pro se assignment of error, he contends that the trial court erred by not concentrating on the evidence presented that day as opposed to dwelling on old evidence already introduced into the record. Since these four assignments all challenge trial court's imposition of a life sentence, we will discuss these interrelated errors together.
The defendant argues that his sentence is unconstitutionally excessive because the public intimidation conviction, which is the subject offense of the third-felony offender adjudication, did not involve an act of violence. He also argues that he has gone to great lengths to rehabilitate himself and that the trial court did not adequately consider the sentencing factors outlined in La. C. Cr. P. art. 894.1. The defendant further argues that the legislature has shown an interest in leniency in his situation by the passage of La. R.S. 15:308 and that the trial court should have considered this statute in his sentencing.
Because the mandatory life sentence imposed for a third-felony habitual offender is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Thomas, 41,734 (La.App.2d Cir.1/24/07), 948 So.2d 1151, writ denied, XXXX-XXXX (La.10/12/07), 965 So.2d 396; State v. Gay, 34,371 (La. App. 2d Cir.4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App. 2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La. 11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
*474 In 2000, La. R.S. 15:529.1(A)(1)(b)(ii), as previously stated, provided that a person could be adjudicated a third-felony habitual offender if his third felony or either of his two prior felonies was a crime of violence under La. R.S. 14:2(B)(13). The statute also imposed a mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.
In reviewing claims of excessiveness of mandatory life sentences, courts have recognized that the mandatory life sentences the habitual offender law requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Johnson, 709 So.2d 672; State v. Wade, 36,295 (La.App. 2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213. Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, supra; State v. Gay, 34,371 (La. App. 2d Cir.4/4/01), 784 So.2d 714.
This court has held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must "clearly and convincingly show that he is exceptional which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, 709 So.2d at 672; State v. Robbins, 43,240 (La.App. 2d Cir.6/4/08), 986 So.2d 828; State v. Wade, supra.
Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason for declaring such a sentence excessive. State v. Johnson, supra; State v. Henry, 42,416 (La.App. 2 Cir. 9/19/07), 966 So.2d 692, writ denied, 07-2227 (La.8/29/08), 989 So.2d 95; State v. Wade, supra. Also State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339.
As stated previously, the habitual offender law concerning a third-felony offender in effect in 2000, when the defendant's crime was committed, required that a person could be adjudicated a third-felony habitual offender if his third felony or either of his two prior felonies was a crime of violence under La. R.S. 14:2(B)(13). La. R.S. 15:529.1(A)(1)(b)(ii). The statute was amended in 2001 to state that a person could be adjudicated a third-felony habitual offender if his third felony and his two prior felonies were crimes of violence. Acts of Legislature 2001 La. Acts 403 § 2. Thus under the new amendment, being designated a third-felony habitual offender went from the requirement of having at least one of three convictions to be a crime of violence (under the 2000 version) to having all three convictions to be crimes of violence. Under both versions, the penalty imposed for a third-felony habitual offender is life imprisonment.
As per La. Const. art. III, § 19, the 2001 amendment was effective on August 15, 2001, and the terms of the amendment only gave it prospective effect. 2001 La. Act 403 § 6.
In the instant case, the mandatory life sentence is not constitutionally excessive. Jurisprudence indicates that the trial court must be clearly and firmly convinced that the mandatory life sentence is excessive. In this case, the trial court went into great detail to explain why it believed the mandatory sentence was, in fact, not constitutionally *475 excessive. The record indicates that, after expressing some sympathy for the defendant and his situation, the trial court ultimately decided that from a legal perspective the mandatory sentence was appropriate in this case. The trial court's decision is not unreasonable and is supported by the record. For instance, the defendant's two prior felony convictions were crimes of violence, and the trial court stated that the defendant showed his "propensity for violence" when he sent harassing letters to his wife while he was in prison.
Under Johnson, supra, another factor to consider in evaluating whether a defendant is so exceptional as to warrant a downward departure from a mandatory term of life imprisonment is to examine the violent nature of the offender's crimes. The predicate convictions were two crimes of violence (simple burglary and aggravated battery) and one nonviolent crime (public intimidation). The circumstances of the two crimes of violence are not available in the record. His public intimidation offense, although serious, did not involve physical violence but the use of verbal threats by the drunken defendant.
Another factor to consider under Johnson, supra, is to evaluate the defendant's life sentence when compared to the goals of the habitual offender law to deter and punish recidivism. It is clear from the record that the defendant suffered from a severe substance abuse problem with drugs and alcohol. In fact, it was the defendant's drunkenness that sparked the public intimidation offense that is the subject offense of the third-felony offender adjudication. Even though the defendant has completed several educational, substance abuse, and other improvement classes in jail, considering the Johnson factors, the defendant's sentence to life imprisonment is not constitutionally excessive.
Additionally, the text of the 2001 amendment to the Habitual Offender Law  which provided for more lenient sentences  expressly stated that the amendment was to apply prospectively. Thus, the legislative intent is that the more lenient provision should not be applied to offenders before the effective date of the amendments.
The legislature passed some ameliorative penalty provisions regarding third-felony habitual offenders in La. R.S. 15:308, which states:
§ 308. Ameliorative penalty provisions; retroactivity; amendment of sentence; time limitations
A. (1) The legislature hereby declares that the provisions of Act No. 403 of the 2001 Regular Session of the Legislature provided for more lenient penalty provisions for certain enumerated crimes and that these penalty provisions were to be applied prospectively.
(2) The legislature hereby further declares that Act No. 45 of the 2002 First Extraordinary Session of the Legislature revised errors in penalty provisions for certain statutes which were amended by Act No. 403 of the 2001 Regular Session of the Legislature and that these revisions were to be applied retroactively to June 15, 2001, and applied to any crime committed subject to such revised penalties on and after such date.
B. In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced according *476 to the following provisions: . . . R.S. 15:529.1(A)(1)(b)(ii), . . . provided that such application ameliorates the person's circumstances.
C. Such persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22.
The ameliorative provisions of La. R.S. 15:308 are only available to qualified persons once their convictions and sentences are final, and the statute only allows a qualified person to seek relief with the Risk Review Panel, not with the judiciary. State v. Dick, 06-2223 (La.1/26/07), 951 So.2d 124; State v. Surry, 41,909 (La.App. 2d Cir.10/26/06), 943 So.2d 544, writ denied, 06-2891 (La.9/21/07), 964 So.2d 329.
Taken as a whole, all of these factors show that the defendant does not qualify as an exceptional case where a downward departure would be warranted. Therefore, these assignments of error are without merit.

Habitual Offender Adjudication
In the fourth pro se assignment, the defendant argues and submits that his habitual offender adjudication was as a third felony offender using his 1985 simple burglary and his 1995 aggravated battery. The state's own motion dismissed his 1978 conviction of armed robbery, for lack of proof that it was the defendant Mr. Mead. Therefore, the armed robbery charge should not be used in argument pursuant to LSA R.S. 14:59(A)(5) and R.S. 14:134(1)-(3) and 14:134.2(A)-(B).
This argument was raised and denied by this court in Mead, 927 So.2d at 1266. This assignment is therefore moot.

Ineffective Assistance of Counsel
The defendant's fifth and final pro se assignment of error contends that he had ineffective assistance of counsel. However, the defendant failed to brief this assignment.
URCA Rule 2-12.4 provides in pertinent part:
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification of assignment of error which has not been briefed.
Thus, this assignment of error is deemed abandoned.

CONCLUSION
For the aforementioned reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] State v. Mead, 36,131 (La.App. 2d Cir.8/14/02), 823 So.2d 1045.
[2] State v. Mead, 38,129 (La.App. 2d Cir. 9/18/03).
[3] State v. Mead, 40,406 (La.App. 2d Cir.4/19/06), 927 So.2d 1259, writ denied, 06-1426 (La.12/8/06), 943 So.2d 1060.
[4] See State v. Mead, 42,674 (La.App. 2d Cir. 11/14/04), 988 So.2d 740. This court remanded the case for supplementation of the record.